**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN F. STREMPLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-890 |
| | ) | |
| JAMES B. PEAKE, SECRETARY | ) | Magistrate Judge Bissoon |
| OF THE DEPARTMENT OF | ) | |
| VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM ORDER

For the reasons that follow, Plaintiff's Petition for Attorneys' Fees, Costs, and Interest (Docs. 108) will be granted in part and denied in part as follows: attorneys' fees in the amount of $223,473.60 will be awarded to Plaintiff John F. Stremple under the Equal Access to Justice Act ("EAJA"); and his requests for costs and interest will be denied.

## ANALYSIS

**A.      Plaintiff's First Amended Petition Will Be Denied, His Second Amended Petition Will Be Stricken, and the Court Will Rule on His Original Petition.**

Plaintiff has filed an original Petition (Doc. 108), a First Amended Petition (Doc. 115), and a Second Amended Petition (Doc. 118). For the purposes of establishing eligibility under the EAJA's "net worth" provisions, the original Petition contained only the bald assertion that Plaintiff's net worth did not exceed $2 million. *Compare* Doc. 108 at ¶ 5 *with* text Order dated Dec. 5, 2008 ("to be eligible under the EAJA, Plaintiff bears the burden of proving that his net

---

[1]  By operation of Federal Rule of Civil Procedure 25(d), current Secretary of the Department of Veterans Affairs James B. Peake is automatically substituted for his predecessor, R. James Nicholson. *See id.*

worth did not exceed $2,000,000 at the time his civil action was filed") (citation to quoted source omitted).

The only material difference between the original and First Amended Petitions is the latter's amendments addressing Plaintiff's request for interest. *Compare* Doc. 108 *with* Doc. 115. For the reasons stated below, the Court will not award interest, and the First Amended Petition (**Doc. 115**) therefore is **DENIED AS MOOT**.

The Second Amended Petition was filed in response to the Court's directive that Plaintiff provide evidence, not bald assertions, regarding his net worth. *See* Dec. 5th text Order. The Second Amended Petition provides such evidence, but it also seeks additional "fees for fees" based on counsel's efforts to secure Plaintiff's accounting information, and related activities. *See* Doc. 118 at pgs. 24-25.

Plaintiff was neither invited nor granted leave to file his Second (or First) Amended Petition(s). To the extent that additional filings were necessary, they resulted from Plaintiff counsel's failure to include in the original Petition evidence regarding Plaintiff's net worth.

Counsel's request for additional "fees for fees," based on their failure to adequately support Plaintiff's initial EAJA request, is inappropriate and, frankly, brazen in its conception.

Plaintiff's Second Amended Petition (**Doc. 118**) is **STRICKEN**, although the Court will construe the evidence attached thereto regarding Plaintiff's net worth as his response to the text Order dated December 5, 2008.

## B.   Plaintiff Qualifies Under the EAJA's "Net Worth" Provisions.

Plaintiff has submitted the sworn statements of his certified public accountant, "prepared using generally accepted accounting principles," opining that Plaintiff's net worth as of the filing of the Complaint was $1,598,793.00. *See* Doc. 118-2 at pgs. 1-2. The Court is satisfied that this

evidence carries Plaintiff's burden of proof under the EAJA. *See* Broaddus v. U.S. Army Corps of Eng'rs, 380 F.3d 162, 169 (4th Cir. 2004) (where CPA's affidavit "allows the court to subtract liabilities from assets, thereby enabling the court to determine an applicant's net worth, then no further documentation is required").

The only specific challenge leveled by Defendant is the accountant's failure to include as an "asset" Plaintiff's presumed Civil Service Retirement System ("CSRS") payments. *See* Def.'s Resp. to Am. Petitions (Doc. 119) at 11-12. The Government posits:

> When he retired in July of 1999, Plaintiff had over thirty-one . . . years of federal service. Thus, Plaintiff would be receiving a federal yearly pension, since his retirement, based on a percentage of his high-three average of yearly salary. Plaintiff's annual VA salary when he retired was $163,205.14. When a proper valuation of this is included, . . . Plaintiff's net worth will increase significantly. . . . Since Plaintiff has not included this asset within the valuation, he has not demonstrated that his net worth was less than $2,000,000 when he commenced this action.

*Id.*

Taking Defendant's premise as true, the Government's objection is insufficient to rebut Plaintiff's evidence that his net worth did not exceed $2 million. Using Plaintiff's pre-retirement salary of $163,205.14 as his "high-three [year] average," Plaintiff would enjoy a daily payment of $447.14 ($163,205.14 divided by 365).[2] Plaintiff retired effective July 17, 1999 (*see* Doc. 27 at ¶ 38), and he filed his Complaint on May 18, 2001. *See* Compl. (Doc. 1). 671 days passed between Plaintiff's retirement and the filing of this lawsuit and, under Defendant's theory, the sum of Plaintiff's CSRS payments would have been $300,030.94 ($447.14 times 671). Adding this to his accountant's net worth figure of $1,598,793.00, Plaintiff falls safely under the

---

[2] The Court has no reason to doubt that Plaintiff's actual "high-three average" would be lower than his final year's salary, as federal employee salaries increase rather than decrease over time.

$2 million ceiling established in the EAJA (*i.e.*, $1,598,793.00 plus $300,030.94 equals $1,898,823.94).

Defendant's arguments regarding Plaintiff's presumed CSRS payments do not create sufficient doubt regarding his eligibility under the EAJA, and the courts have cautioned against allowing the "determination of eligibility for . . . fees [to] result in a second trial."  *See* Broaddus, 380 F.3d at 169.  Accordingly, Plaintiff has satisfied the "net worth" provisions of the EAJA.

**C.**       **Plaintiff's EAJA Petition Is Timely.**

An EAJA petition must be filed within thirty days of the judgment that "terminates the civil action for which EAJA fees may be received."  Shubargo v. Astrue, 498 F.3d 1086, 1088 (10th Cir. 2007) (citations and internal quotations omitted).  "The 30-day EAJA clock begins to run after the time to appeal . . . has expired" and, "[i]n the event of a[n] appeal [to the] circuit court, the thirty day limitations period commences upon the expiration of the ninety day period to petition the . . . Supreme Court for certiorari."  *Id.* (citations and internal quotations omitted).

The Court of Appeals for the Third Circuit entered its Judgment of affirmance on August 27, 2008.  *See* Doc. 107.  Plaintiff filed his initial Petition on October 6, 2008, well before his EAJA deadline of December 25, 2008 (August 27th + 90 days + 30 days).  Plaintiff's Petition therefore is timely.  *See* discussion *supra*; *cf. also* Natural Res. Def. Council, Inc. v. Department of Energy, 2007 WL 2349288, *2 (N.D. Cal. Aug. 15, 2007) ("[t]he thirty-day period established in the EAJA is an outer limit," and "[t]he statute does not require a prevailing plaintiff to wait for that period to expire") (citations omitted).

**D.      Defendant Has Failed to Carry Its Burden of Demonstrating "Substantial Justification" Regarding the Government's Underlying Acts and Omissions.**

Under the EAJA, attorneys' fees are appropriate unless the Government shows its positions were "substantially justified." Morgan v. Perry, 142 F.3d 670, 683 (3d Cir. 1998) (quoting EAJA, 28 U.S.C. § 2412(d)(1)(A)). The Court looks not only to Defendant's litigation position, but also to "the record with respect to the action or failure to act by the agency upon which the civil action is based." *Id.* (citation to quoted source omitted); *see also id.* at 684 (inquiry includes "the agency position that made the litigation necessary in the first place").

To prove substantial justification, the Government must show a reasonable basis in truth for the facts alleged, a reasonable basis in law for the theories it propounds, and a reasonable connection between the facts alleged and legal theories advanced. Barry v. Astrue, 2007 WL 2022085, *2 (E.D. Pa. Jul. 9, 2007) (citations to binding Third Circuit authority omitted). Defendant's burden "is a strong one[,] and [it] is not met merely because the [G]overnment adduces some evidence in support of its position[s]." *Id.* (citations and internal quotations omitted).

The undersigned has little doubt that the Government's legal theories, up to and including the bench trial in this case, were substantially justified. *Cf., e.g.,* Def.'s Opp'n Br. (Doc. 113) at 9-10 (noting disagreement, prior to recent Supreme Court decision, regarding whether United States waived sovereign immunity for claims of retaliation under ADEA). The District Court's findings and conclusions, however, preclude a showing of substantial justification. After a full trial on the merits, the District Court determined that:

> •      Plaintiff's supervisors and co-workers made numerous
>         ageist statements regarding him, *see* District Court's
>         Findings and Conclusions (Doc. 99, hereinafter "Fs & Cs")
>         at 10-13;

- Plaintiff's complaints of discrimination caused his superiors to act against him with retaliatory animus, *id.* at 13-16; and

- Plaintiff's supervisors participated, or were complicit, in creating a work environment intolerable to a reasonable person in Plaintiff's position (*i.e.*, constructive discharge), *id.* at 11, 17-24.

Before and during trial, Defendant denied these facts in all material respects. *See, e.g.*, Def.'s Proposed Findings & Conclusions (Doc. 97) at 58 (arguing evidence "strongly suggest[ed] that[,] while Plaintiff was unhappy during his last several years of . . . employment, he did not suffer any age-related discrimination [or] retaliation for . . . protected activity"). The District Court found the Government's denials and alternative explanations unworthy of credence. *See* discussion *supra*; *see also, e.g.*, Fs & Cs at 14 n.12 (rejecting Defendant's assertion that Plaintiff was "non-cooperative and difficult"); *id.* at 14 (sworn statements of supervisor Dr. Urban confirmed view that, based on EEO charges, Plaintiff was viewed as "a problem employee," and Plaintiff's superior Thomas Cappello "wanted to be rid of [him]"); *and id.* at 15 (rejecting Defendant's reliance on "the self-serving, and facially suspect, editorializations in Dr. Urban's notes" regarding Plaintiff's complaints of discrimination). The Court's fact findings regarding liability were not challenged on appeal, and they were affirmed by the Third Circuit Court. *See* 3d Cir. Opinion (Doc. 111-2) at 1-8.

Under the circumstances, the Government cannot carry its "strong burden" of showing a reasonable basis in truth for the facts it alleged and a reasonable connection between those facts and the legal theories advanced. *See* discussions *supra*; *compare also, e.g.*, Fs & Cs at 24 (finding Plaintiff presented "a textbook case of constructive discharge") *with* 3d Cir. Opinion at 7 (District Court's fact findings, "which the Secretary [did] not contest," presented "ample

evidence that [Plaintiff] was forced out of his position, his work was made intolerable, and his supervisors acted with retaliatory animus toward him, leading to a constructive discharge"; "[v]irtually all of the factors . . . considered in a constructive discharge case . . . were present in [this] case").  Defendant's claim of substantial justification cannot defeat Plaintiff's entitlement to fees under the EAJA.

### E. Defendant Has Failed to Identify Special Circumstances Making an Award of Attorneys' Fees Unjust.

In claiming that an award of fees would be unjust,[3] Defendant essentially rehashes its unsuccessful arguments at trial and on appeal regarding Plaintiff's purported failure to mitigate damages.  *Compare* Def.'s Opp'n Br. at 12-14 (after constructive discharge, Plaintiff ceased working, allowed his malpractice insurance to expire, and received retirement benefits) *with* 3d Cir. Opinion at 9 ("there was adequate basis for the [District Court]'s determination that [Plaintiff] made sufficient efforts to find other employment and, in light of his inability to do so, ceasing to maintain his license [and malpractice insurance] was a financial necessity") *and* Fs & Cs at 25 n.31 ("[a]lthough . . . Plaintiff has received social security benefits and a federal pension, . . . Defendant has neither requested nor shown that any setoff(s) are appropriate") (citation omitted).

The Government has failed to identify special circumstances warranting a denial of Plaintiff's Petition.

---

[3]  The exception regarding "special circumstances mak[ing] an award unjust" is codified under EAJA Section 2412(d)(1)(A).  *Id.*

**F.     Plaintiff Is Entitled to Some, But Not All, of the Attorneys' Fees Requested in His Petition.**

Having concluded that Plaintiff is eligible for fees under the EAJA, the Court must determine the amount to which he is entitled.

First is the question of Plaintiff counsel's hourly rates.  Plaintiff seeks an adjustment of the $125/hour statutory rate based on cost-of-living increases.  *See* Pl.'s original Petition at ¶ 7. Defendant does not meaningfully dispute this request, *see* Def.'s Resp. (Doc. 112) at ¶ 7, and Plaintiff's position otherwise is consistent with the law.  *See* <u>Barry</u>, 2007 WL 2022085 at *6 (noting Third Circuit Court's approval of adjustment of EAJA fees to compensate for increases in cost of living) (citations omitted).  Plaintiff asks that his counsel's rates be adjusted to $168/hour based on the Consumer Price Index; this proposed rate is uncontested by the Government; and it is commensurate with the rates identified in other recent EAJA petitions before the Court.  *Cf., e.g.*, EAJA Petition in Civil Action No. 07-1345 (Doc. 16) (requesting $170/hour based on local cost-of-living increases); Gov't.'s Response to EAJA Petition in Civil Action No. 07-1733 (Doc. 22) (stipulating to award calculated at rate of $173.30/hour).

Plaintiff also requests a rate enhancement based on his attorneys' specialized knowledge and litigation experience.  *See* Pl.'s Petition at ¶ 8.  Although hard-fought, the trial in this case presented a relatively straightforward application of employment discrimination law, and the Court cannot agree that the requested enhancement is appropriate.  *See generally, e.g.*, <u>Johnson v. Gonzales</u>, 416 F.3d 205, 213 (3d Cir. 2005) (although petitioner's counsel was "an experienced attorney who specialize[d]" in subject matter at issue, case presented "a straightforward application" of legal standards "that [did not] require[] research into little-known areas of [the] law or [other] particular knowledge" justifying enhancement) (citation omitted). Counsel fees therefore will be assessed at a rate of $168/hour.

Turning to the hours of attorney time claimed, Plaintiff has submitted detailed billing records that correlate the number of hours worked with counsel's specific, discrete acts. *See* Ex. A to Petition (pgs. 5 through 24 of Doc. 108, hereinafter "Plaintiff's billing records"). Plaintiff's billing records provide the requisite level of detail under the law. *Compare id. with* Esprit Corp., Inc. v. U.S., 15 Cl. Ct. 491, 494 (1988) ("[a] party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and the need for the service, and the reasonable fee to be allowed") (citation to quoted source omitted).

In its opposition, the Government challenges the reasonableness of certain of Plaintiff's claimed fees. *See* Def.'s Opp'n Br. at 16-18. Consistent with Third Circuit law, this Court will restrict its analyses to the specific objections leveled by Defendant. *See* U.S. v. Eleven Vehicles, 200 F.3d 203, 211-12 (3d Cir. 2000) ("the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request"; "because statutory fee litigation is adversarial [in nature], there is no need" for "the district court to reduce a fee award on its own initiative") (citations omitted).[4]

Defendant first asserts that a "cursory review of Plaintiff's [Petition] shows that there are excessive, redundant, and otherwise unnecessary hours for which Plaintiff seeks reimbursement." Def.'s Opp'n Br. at 16-17. This challenge lacks sufficient specificity to permit judicial review, and the Government's general objection is overruled.

Defendant next challenges the "over 79 hours" of fees expended by Plaintiff's counsel in exhausting pre-litigation administrative remedies. *Id.* at 17. The Court has confirmed that

---

[4] The Government also requests that, "[s]hould [Plaintiff's Petition] not be rejected in its entirety," that Defendant be granted discovery to "probe into the purported reasonableness of the hours allegedly expended." Def.'s Opp'n Br. at 18. Defense counsel has not cited, and this Court is unaware of, any legal authority supporting this request.

79.8 hours were so charged, and the prevailing view is that such fees are not recoverable.

*See, e.g.*, <u>Friends of Boundary Waters Wilderness v. Thomas</u>, 53 F.3d 881, 887 (8th Cir. 1995) (award of EAJA fees for administrative proceedings "is limited to cases in which there is a <u>post-litigation remand</u> for further administrative proceedings"; "pre-litigation administrative proceedings do not have the requisite ancillary relationship with the judicial action to permit [an award] of fees") (citations omitted, emphasis added); <u>Adens for Green v. Bowen</u>, 1989 WL 36930, *2 (E.D. Pa. Apr. 14, 1989) ("[o]n its face[, the EAJA] applies only to proceedings in 'court' and therefore proceedings [before] an administrative agency are excluded from coverage") (quotations in original, citation to binding Third Circuit authority omitted).[5]

Defendant next argues:

> Plaintiff's [Petition] alleges over 158 hours expended by counsel from February 9, 2007, when counsel received Appellant's Circuit Brief[,] up through August 28, 2008, the date of receipt of the Third Circuit Opinion affirming the District Court decision. However, not acknowledged in this Fee Petition is that counsel for Plaintiff apparently 'farmed-out' the research and writing of Appellee's Responsive Brief. Clearly, the amount of hours allegedly performed on research and writing Appellee's Brief by Plaintiff's counsel is not only excessive but lacks candor with the Court. On this basis alone, all of this time claimed in the [Petition] should be excluded.

---

[5]  In calculating Plaintiff's pre-litigation fees, the Government appears to have tallied counsel's recorded hours up until their May 14, 2001 billing entry stating "[r]esearch and draft[ing] of Complaint." *Compare* Def.'s Opp'n Br. at 17 (referencing "over 79 of [requested] reimbursement") *with* Pl.'s Billing Records at pgs. 5-6 of 34 (reflecting 79.8 hours billed before May 14, 2001). In reply, Plaintiff does not take issue with Defendant's calculation, but rather argues that the fees are recoverable under the ADEA. *See* Pl.'s Reply Br. (Doc. 114) at 5. Plaintiff presents an <u>EAJA</u> Petition, however, and counsel already have stipulated that attorneys' fees are not available under the ADEA. *See* Joint Stip. (Doc. 48). In any event, Plaintiff does not dispute that the 79.8 hours spent prior to May 14, 2001, were pre-litigation fees, so the Court will accept Defendant's calculation.

Def.'s Opp'n Br. at 17-18; *see also* Ex. 8 to Doc. 113 (bill from Plaintiff's appellate services vendor, referenced by Defendant, reflecting total charge of $2,852.00 for "Brief for Appellee," "research/draft," "3 issues," "table of contents," "table of authorities," "add certification," "add supplemental appendix," "pdf/electronic [c]ourt filing," "reproduction," "covers/binding," "[f]iling/[s]ervice/[a]ffidavit," and "court hand delivery").

To the extent Defendant suggests that Plaintiff's counsel "farmed out" its appellate responsibilities for the cost of $2,852.00, the referenced vendor should have a thriving business, indeed. Otherwise, it is more than reasonable to assume that the vendor's services were utilized in conjunction with Plaintiff counsel's labor.

Finally, Defendant challenges the 40-plus hours charged for the preparation of a Bill of Costs in the Third Circuit and the instant Petition under the EAJA. *See* Def.'s Opp'n Br. at 18. Absent circumstances not presented here, "reasonable 'fees for fees' are recoverable under the EAJA." *See, e.g.*, Gardner v. Social Sec. Admin., 2001 WL 1537722, *5 (E.D. La. Nov. 30, 2001) (citations omitted, internal quotations in original). A review of Plaintiff's records reveals that the bulk of hours requested relate to the preparation of counsel's nineteen-page, single spaced billing entries. While the 40.7 hours claimed appear somewhat high, the Court has no basis for concluding they are *per se* unreasonable. Accordingly, Defendant's objection is overruled.

The analyses above address all of the specific challenges leveled by the Government and, otherwise, the Court's review of Plaintiff's billing statements has failed to identify sufficient indicia of unreasonableness to independently question counsel's entries.[6]

---

[6] Again, the Court doubts that Defendant has made "sufficiently specific objection[s]," beyond those identified above, to warrant an independent review of all Plaintiff's billing entries. *See* Eleven Vehicles, 200 F.3d at 211. Even assuming it has, the Court has failed to identify

As for the final sum due, after subtracting the 79.8 hours spent on the pre-litigation administrative process, the Court's calculations place the total number of hours recorded at 1,330.2. Multiplying this by the $168/hour rate approved above, the Government owes Plaintiff $223,473.60 in attorneys' fees.

Plaintiff's Petition does not specify whether the award should be made payable to the client or his attorneys. *See id.* at Wherefore clause. "The EAJA provides that . . . attorney's fees shall be awarded to 'a prevailing party,'" and "[t]he term 'prevailing party' refers to the litigant himself, not his attorney[s]." Riggins v. Commissioner of Soc. Sec., 2008 WL 4822225, *2 (D. N.J. Nov. 3, 2008) (internal quotations in original, citations omitted). Thus, Defendant shall make the EAJA award payable directly to John F. Stremple and forward said payment to the business address of Plaintiff's lead counsel, Verdell Dean.

### G.     Plaintiff's Request for Costs under the EAJA Is Denied.

Although certain costs are available under the EAJA, the Third Circuit Court has made clear that their award is "incident [to the initial] judgment." *See* Morgan v. Perry, 142 F.3d at 689-90 (citation omitted); *see also id.* at 689 (highlighting requirement that "[a] bill of costs . . . be filed in the case [in which the corresponding judgment is entered] and, upon allowance, included in [that] judgment or decree") (citation to quoted statute omitted). No bill of costs was filed in the District Court, nor did Plaintiff appeal any aspect of this Court's Judgment. *See generally* record in this case. Under the circumstances, costs cannot be awarded. *See* Morgan at 689-90 ("[t]he award or non-award of costs is inherent to, and appealable from, the initial judgment," and where plaintiff "did not appeal from any part of the district court's merits

---

sufficient grounds for adjusting Plaintiff counsel's hours through an exercise of judicial discretion. *See id.*

decision," "that aspect of the [initial] judgment [was] a final decision" insusceptible to later judicial review) (citation omitted).

### H. Plaintiff's Claim for Prejudgment Interest Will Be Denied.

In an ADEA case, the decision whether to award prejudgment interest is within the discretion of the District Court. Tomasso v. Boeing Co., 2007 WL 2753171, *1 (E.D. Pa. Sept. 21, 2007) (citation to binding authority omitted).[7] "[A] post[-]judgment motion for discretionary prejudgment interest involves the kind of reconsideration . . . encompassed within" Federal Rule of Civil Procedure 59(e) and, "[t]herefore, [it] must be timely filed within 10 days of entry of the final judgment." Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Employees, 960 F.2d 1187, 1192 (3d Cir. 1992) (citation to quoted source omitted).

At no time during the trial court proceedings did Plaintiff request an award of interest. Such a request does not appear in the Complaint, *see* Doc. 1 at "Prayer for Relief"; in Plaintiff's initial Pretrial Statement, *see* Doc. 38 at 3; Plaintiff's Amended Pretrial Statement, *see* Doc. 58 at 3; or in Plaintiff's Proposed Findings and Conclusions, *see* Doc. 98 at 49-50, ¶ 24. No motion to alter or amend judgment was filed under Federal Rule 59(a), nor did Plaintiff appeal the District Court's non-award of prejudgment interest.

Plaintiff's request for prejudgment interest is untimely, and it is denied. *See* Schake; *see also* Mays v. JP & Sons Inc., 2006 WL 1209693, *3 (5th Cir. Apr. 28, 2006) (denying prejudgment interest where petitioners' request was stated in complaint, but not in document that

---

[7] Although the EAJA contains an interest provision, it is not applicable in this case. *See* EAJA § 2404(f) (contemplating payment of interest on EAJA award "[i]f the United States appeals [the] award of costs or fees").

"operate[d] as the final amendment to the pleadings," "in their request for findings of fact and conclusions of law," or in motion under Federal Rule 59(e)).[8]

## I. Plaintiff Has Failed to Demonstrate the Government Has Waived Sovereign Immunity Regarding Postjudgment Interest.

Unlike prejudgment interest, the award postjudgment interest is nondiscretionary.

*See* Dunn v. HOVIC, 13 F.3d 58, 62 (3d Cir. 1993) ("post-judgment interest is awarded [under 28 U.S.C. § 1961] as a matter of law so it is automatically added, whether or not the district court orders it") (citation omitted). Courts have held, however, that the United States has not waived sovereign immunity regarding postjudgment interest under the ADEA or FLSA.[9] *See* U.S. Shoe Corp. v. U.S., 296 F.3d 1378, 1381 (Fed. Cir. 2002) ("[i]nterest may only be recovered in a suit against the government if there has been a clear and express waiver of sovereign immunity") (citations omitted); Krodel v. Young, 624 F. Supp. 720, 724 (D. D.C. 1985) (finding no waiver of sovereign immunity for postjudgment interest under ADEA); *see also* Adams v. U.S., 350 F.3d 1216, 1229 (Fed. Cir. 2003) ("the United States has not waived its sovereign immunity with respect to an award of post-judgment interest in FLSA cases") (citation to quoted source omitted).

---

[8]  Even if this Court had the discretion to award prejudgment interest in this case, it would not do so. Defendant had no reason to believe, before or during the trial court proceedings or on appeal, that Plaintiff had any intention of seeking prejudgment interest. Given Plaintiff's silence until over seven years after the filing of this lawsuit, an award of interest would be inequitable. *See generally* Vanalt Elec. Constr., Inc. v. Selco Mfg. Corp., 2008 WL 63245, *2-3 (E.D. Pa. Jan. 3, 2008) (in determining whether to grant discretionary award of prejudgment interest, court considers "the diligence of the plaintiff" and "countervailing equitable considerations [that] militate against an award") (citations omitted).

[9]  The unavailability of post-judgment interest against the United States under the FLSA is relevant here because "[t]he ADEA incorporates the enforcement powers, remedies, and procedures of" the FLSA. *See* Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 372 (3d Cir. 2004) (citation omitted).

Plaintiff has failed to demonstrate a waiver of sovereign immunity, and his request for postjudgment interest is denied.

**<u>CONCLUSION</u>**

For all of the reasons stated above, Plaintiff's EAJA Petition (**Doc. 108**) is **GRANTED** to the extent that attorneys' fees in the amount of $223,473.60 shall be paid to Plaintiff, and his requests for costs and interest are **DENIED**.

IT IS SO ORDERED.

January 22, 2009                                  s/Cathy Bissoon
                                                  Cathy Bissoon
                                                  United States Magistrate Judge

cc (via email):

James P. Ross, Esq,
Verdell Dean, Esq.
Albert W. Schollaert, Esq.
Rebecca Ross Haywood, Esq.